UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DEAN TRAVIS VELIX ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 3:02-cv-372 |
| ) | 3:01-cr-039 |
| ) | *Jarvis* |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Dean Travis Velix ("Velix"). For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.

I. Standard of Review

This court must vacate and set aside Velix's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, Velix "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that Velix is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

Velix was originally indicted, on December 7, 1999, of conspiracy to possess with intent to distribute marijuana. [Criminal Action No. 3:99-cr-143, Court File No. 1, Indictment]. The indictment did not allege a specific drug amount, although the grand jury

2

did reference 21 U.S.C. § 841(b)(1)(A)[1], which is the penalty section for possession with intent to distribute more than 1000 kilograms of marijuana and which provides for a ten-year mandatory minimum sentence up to life imprisonment.

As a result of the Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and pursuant to a plea agreement, Velix pleaded guilty to an information charging him with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). Section 841(b)(1)(B) is the penalty section for possession with intent to distribute more than 100 kilograms of marijuana and provides for a five-year mandatory minimum sentence up to 40 years of imprisonment. The government then moved to dismiss the previously filed indictment.

As part of his plea agreement, Velix agreed in writing to the following Stipulation of Facts:

> Beginning in 1994, and continuing up to and including early April, 1997, Jesus Beltran, also known as Big Jessie, delivered, or caused to be delivered, marijuana to Steve Timothy Beddingfield and others in the Eastern District of Tennessee, the Western District of North Carolina, and the District of South Carolina. In addition to Jesus Beltran and Steve Beddingfield, members of the conspiracy included Jerry Lee O'Neal, Manuel Beltran, also known as Little Jessie, Frank Sullivan, David O'Neal, David Yarborough, Jeremy Russell King, Deborah Smith, Sandy Bryan, Donnie Bryant, Randy McClure, Danny Adams, Willard Joseph Guest, also known as Bud, Jorge Ramirez Ramos, Dean Travis Velix, Vickie Stinnett, Jesus Borunda, Jose Rodolpho Borunda, Tony Burnett, Glen Parris, Pete Lawson, and a Mexican male known as Pepe, also known as No Excuses.

---

[1] Both Velix [Court File No. 2, Memorandum of Law in Support of Motion to Vacate Sentence, p. 1] and the probation officer [Criminal Action No. 3:01-cr-39, Presentence Investigation Report, p. 4, ¶ 1] are incorrect when they say the Indictment charged a violation under 21 U.S.C. § 842(b)(10(B).

3

Generally, Jesus and/or Manuel Beltran delivered, or caused to be delivered, marijuana from Mexico, sometimes by way of Florida, to Beddingfield in the Western District of North Carolina, the District of South Carolina, and the Eastern District of Tennessee; or to O'Neal in the Eastern District of Tennessee.  However, O'Neal also took deliveries in the Western District of North Carolina, and Beddingfield arranged for O'Neal to receive partial shipments of marijuana in the Eastern District of Tennessee, which had already been delivered to Beddingfield in North Carolina.  In addition to receiving marijuana from the Beltrans, Beddingfield also received marijuana from a man called Pepe who referred to himself as "No Excuses" because he accepted no excuses from anyone for failure to pay for marijuana.  During 1994 and 1995, approximately 888 pounds of marijuana was delivered by Jesus Beltran, or at his direction, to Beddingfield and O'Neal.  In 1996, approximately 1,710 pounds of marijuana was delivered, and until the conspiracy was dismantled by law enforcement in 1997, approximately 328 pounds had been delivered for a total of 2,926 pounds of marijuana.

The marijuana delivered to Beddingfield, which did not go to O'Neal, generally remained in various locations in the Western District of North Carolina, or in the District of South Carolina, specifically, in and around Greenville, South Carolina.  However, portions of Beddingfield's marijuana were also stored in fifty-gallon barrels at a house owned by Beddingfield in Cosby, Tennessee.  Beddingfield's marijuana would be distributed eventually to individuals such as Dean Travis Velix, Glenn Parris, and Tony Burnett.  Although the majority of marijuana transactions involving the individuals immediately named above occurred in North Carolina or South Carolina, each of these individuals either traveled into the Eastern District of Tennessee to deliver or obtain marijuana, or received marijuana in North or South Carolina which was transported by O'Neal or other members of the conspiracy into those states from Tennessee.  One such example of this occurred in approximately early April, 1996, when Velix (who was generally a transporter and stash house custodian), at Beddingfield's direction, obtained approximately eighty pounds of marijuana originally delivered by Pepe to Parris in Clinton, North Carolina.  This marijuana in turn was delivered to Jerry O'Neal in Tennessee. In approximately December, 1996, Velix retrieved eighty pounds of Beddingfield's marijuana from Jerry O'Neal in Newport, Tennessee. O'Neal had been unable to sell this marijuana because of its poor quality.  Velix and Parris then transported this marijuana to Randy McClure who eventually purchased approximately twenty pounds.  Similarly, Pete Lawson also obtained marijuana from O'Neal in Tennessee and transported it into South Carolina for distribution to Tony Burnett.

4

Dean Velix became involved in the conspiracy in 1994 or 1995 when he began buying small amounts of marijuana from Beddingfield. There was usually quarter-ounce to pound amounts which Velix sold at work. Eventually, Velix began to transport marijuana for Beddingfield. Most of Velix's involvement was in Western North Carolina and upper South Carolina; however, Velix did conduct some transactions in the Eastern District of Tennessee as outlined above. In addition to transporting marijuana, Velix utilized his residence in Marietta, South Carolina, as a stash house for portions of Beddingfield's marijuana. Velix kept the marijuana in five-gallon plastic barrels alongside a dirt road near the residence and distributed it to other conspiracy members such as Tony Burnett.

Based upon the evidence presented in this case, the defendant is responsible for at least 100 kilograms, but less than 400 kilograms of marijuana, a Schedule I controlled substance. *See* U.S.S.G. § 2D1.1(c)(7).

[Criminal Action No. 3:01-cr-39, Court File No. 6, Stipulation of Facts, pp. 1-3].

After pleading guilty on March 8, 2001, Velix continued on bond pending sentencing. On March 12, 2001, he submitted a urine sample that tested positive for marijuana; he then absconded from pretrial supervision. A warrant issued on March 30, 2001, and on September 12, 2001, Velix self-surrendered and was detained. [*Id.*, Presentence Investigation Report, p. 4, ¶ 4].

The probation officer calculated Velix's guideline sentence range as 63 to 78 months. [*Id.* at 12, ¶ 54]. Velix began with a base offense level of 26, based upon the amount of marijuana to which he pleaded. Velix received a two-level decrease under the safety valve. The probation officer recommended a two-level increase for obstruction of justice based upon his positive drug screen and his absconding from supervision; the probation also recommended denying a reduction for acceptance of responsibility for those reasons. [*Id.* at 7-8, ¶¶ 18-28]. The probation officer noted that Velix met the criterial for imposition of

a sentence in accordance with applicable guidelines, without regard to a statutory minimum sentence, pursuant to 18 U.S.C. § 3553(f). [*Id*. at 12, ¶ 53].

Velix, through counsel, filed an objection with a supporting sentencing memorandum, in which he objected to the probation officer's recommendation to deny a reduction for the acceptance of responsibility. [*Id*., Court File No. 10].

The court did not accept the recommendation for a two-level increase for obstruction of justice[2], but did accept the recommendation that Velix be denied a reduction for acceptance of responsibility as a result of his positive drug screen and his absconding from supervision. [Criminal Action No. 3:01-cr-39, Court File No. 18, Transcript of Sentencing Hearing, p. 10]. The court thus determined Velix's guideline sentence range was 51 to 63 months, based upon a total offense level of 24 and a criminal history category of I, and sentenced Velix to a term of imprisonment of 60 months. [*Id*. at 10-11].

In support of his § 2255 motion to vacate sentence, Velix alleges several instances of ineffective assistance of counsel. He also alleges that he is entitled to a reduction based upon acceptance of responsibility, that the government breached the plea agreement by failing to move for a downward departure based upon substantial assistance, and that his sentence is in violation of *Apprendi*. The government contends that Velix has waived the right to raise the latter three claims for relief and that those claims are barred by procedural default.

---

[2]Velix is incorrect when he states that he received a two-point increase in his offense level for obstruction of justice. [Court File No. 2, Memorandum of Law in Support of Motion to Vacate, p. 3].

III. Discussion

*A. Waiver and Procedural Default*

Velix did not file a direct appeal as to his claims that he is entitled to a reduction based upon acceptance of responsibility, that the government breached the plea agreement by failing to move for a downward departure based upon substantial assistance, or that his sentence is in violation of *Apprendi*, and thus has waived his right to present those claims in a § 2255 proceeding. *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) ("Relief is not available in a section 2255 proceeding for a claim of nonconstitutional, sentencing-guideline error when that error was procedurally defaulted through the failure to bring a direct appeal." ); *see also United States v. Frady*, 456 U.S. 152, 167-168 (1982); *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993).

In addition, in his plea agreement, Velix waived the right to file a motion pursuant to 28 U.S.C. § 2255 for any reason other than claims of ineffective assistance of counsel, prosecutorial misconduct, or certain changes in the law. [Criminal Action No. 3:01-cr-39, Court File No. 5, Plea Agreement, p. 5, ¶ 12]. Such a waiver is enforceable. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) ("Accordingly, we hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."); *see also Davila v. United States*, 258 F.3d 448 (6th Cir. 2001) (defendant's waiver of § 2255 relief in a plea agreement barred a collateral attack based upon

ineffective assistance of counsel). Accordingly, Velix has waived the ability to claim that he is entitled to a reduction based upon acceptance of responsibility, that the government breached the plea agreement by failing to move for a downward departure based upon substantial assistance, or that his sentence is in violation of *Apprendi*, and he cannot do so now in a collateral proceeding.

### B. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Velix must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Velix first alleges that his attorney failed to challenge the fact that the information to which he pleaded guilty was not taken to the grand jury, and therefore he could not challenge the validity of the previous indictment in Criminal Action No. 3:99-cr-143. In a related claim, Velix alleges that the government, without objection from defense counsel, circumvented *Apprendi* by proceeding on an information which listed the drug quantity, rather than by filing a superseding indictment which would have specified the drug amounts.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the U.S. Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Id*. at 490. In federal prosecutions, such facts must also be charged in the indictment. *Id*. at 476 (citing *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)).

As noted earlier, the original indictment, in Criminal Action No. 3:99-cr-143, referenced 21 U.S.C. § 841(b)(1)(A). That section provides a mandatory minimum sentence of ten years up to life imprisonment for possession with intent to distribute more than 1000 kilograms of marijuana. Had Velix challenged the original indictment, the government could have sought a superseding indictment, as Velix recognizes, and he would have been facing a greater offense than that charged in the information. Under those circumstances, Velix's

9

attorney was not deficient in recommending, nor was Velix prejudiced by, the decision to plead to an information.

Velix also alleges his attorney failed to argue for a reduction for acceptance of responsibility. This claim is contradicted in the record. As noted, Velix's counsel objected to the probation officer's recommendation to deny a reduction for the acceptance of responsibility. [*Id*., Court File No. 10]. At the sentencing hearing, counsel argued that Velix should receive the three-level reduction for acceptance of responsibility. [Criminal Action No. 3:01-cr-39, Court File No. 18, Transcript of Sentencing Hearing, pp. 7-8].

In any event, Velix's positive test for drug use while free on bond pending sentencing was a clear indication that he had failed to accept responsibility for his criminal conduct and precluded a reduction on that basis. *See, e.g., United States v. Walker*, 182 F.3d 485, 490 (6th Cir. 1999); *United States v. Zimmer*, 14 F.3d 286, 289 (6th Cir. 1994).

Velix further alleges that his attorney was not familiar with the sentencing guidelines. As an example, he claims his attorney failed to inform him that relevant conduct can raise a sentence higher than the one to which the defendant is pleading. He also claims the court, in sentencing Velix, relied on different substances that were listed in other counts that were dismissed, and that counsel failed to object. These claims are contradicted in the record.

The calculation of Velix's based offense level did not include any drug amounts other than the amount to which he stipulated. The court did not increase Velix's sentence based upon any relevant conduct. Based upon the foregoing, Velix has failed to demonstrate

ineffective assistance of counsel under the standard established by the Supreme Court in *Strickland*.

IV. Conclusion

Velix is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** Velix leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Velix having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

                                              s/ James H. Jarvis
                                          United States District Judge